## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| The Hertz Corporation, *et al.*, | Adv. Pro. No. 20-50761 (MFW) |
| Plaintiffs, | |
| -against- | |
| HANNAH AYOUB, NICOLE STEVENS, SHONTRELL HIGGS, JULIUS BURNSIDE, MAGALIE STERLIN, ARTHUR STEPANYAN, HOWARD JUNIOUS, LAKETA COLLINS, MICHELLE JOHNSON, BRIAN STEINBERG, ANTWONE PERSON, MICHAEL KOSS, AMANDA KOSS, CHERYL YOUNG, STEPHANIE KEENE, JAMES KEENE, BARBARA FERNANDEZ, THOMAS JOHN CHANNELL, MICHAEL CHANNELL, JESSICA GURUMENDI, NANCY CULLEN-SMITS, RYAN SMITS, HENRY B. ESSICK III, BRENT D. WILLIAMS, SR., ALEXANDROS GIDER, CHRISTINA GIDER, ROULA VANGELIS, | |
| Defendants. | |

## DEBTORS' BRIEF IN SUPPORT OF
## <u>MOTION FOR PRELIMINARY INJUNCTIVE RELIEF</u>

---

[1] The last four digits of The Hertz Corporation's tax identification number are 8568. The location of the debtors' service address is 8501 Williams Road, Estero, FL 33928. Due to the large number of debtors in these chapter 11 cases, for which joint administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructuring.primeclerk.com/hertz.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 3

ARGUMENT ................................................................................................................. 7

    A.    This Court Has Authority to Enjoin the False Police Report Actions against the Non-Debtor Defendants ...................................................................................... 7

    B.    This Court Should Enjoin the False Police Report Actions against the Non-Debtor Defendants ................................................................................................ 9

        1.    This Court Has Related-to Jurisdiction over the False Police Report Actions against the Non-Debtor Defendants ............................................. 10

        2.    It Is Appropriate for This Court to Enjoin the False Police Report Actions Against the Non-Debtor Defendants ............................................ 13

            a.    The Debtors Share an Identity of Interest with the Non-Debtor Defendants .................................................................... 13

            b.    Allowing the False Police Report Actions to Continue Against the Non-Debtor Defendants Would Adversely Affect the Debtors' Restructuring Efforts ................................................ 15

                i.    Absent a Stay, The False Police Report Actions Will Deplete the Assets of the Bankruptcy Estates of the Debtors ........................................................................... 16

                ii.    Allowing the False Police Report Actions to Proceed Will Divert Substantial Resources Away from the Debtors' Reorganization Efforts ....................................... 19

                iii.    An Adverse Ruling Would Likely Result in Collateral Estoppel, Record Taint and Evidentiary Prejudice .......... 20

    C.    The Equities Weigh in Favor of Enjoining the False Police Report Actions Against the Non-Debtor Defendants ..................................................................... 21

        1.    The Debtors Are Likely to Successfully Restructure .............................. 22

        2.    Absent an Injunction, the Debtors Will Be Irreparably Harmed ............. 23

        3.    The Irreparable Harm to the Debtors Outweighs Any Potential Harm to Plaintiffs ................................................................................................ 24

        4.    Injunctive Relief Is In the Public Interest ............................................... 25

CONCLUSION .............................................................................................................. 25

i

## TABLE OF AUTHORITIES

### CASES

*A.H. Robins Co., Inc. v. Piccinin*,
 788 F.2d 994 (4th Cir. 1986) ...........................................................................................15, 17

*Ayoub v. Hertz Global Holdings, Inc.*,
 No. N20C-05-189 VLM (Del. Super. Ct. May 21, 2020).........................................................5

*Belcufine v. Aloe*,
 112 F.3d 633 (3d Cir. 1997)...........................................................................................10, 11

*Celotex Corp. v. Edwards*,
 514 U.S. 300 (1995)...............................................................................................................10

*In re Am. Film Techs.*,
 175 B.R. 847 (Bankr. D. Del. 1994) ............................................................................. passim

*In re Cont'l Airlines*,
 177 B.R. 475 (D. Del. 1993)...................................................................................14, 17, 19

*In re Ir. Bank Resolution Corp.*,
 No. 13-12159-CSS, 2019 U.S. Dist. LEXIS 166153 (D. Del. Sep. 27, 2019) .......................13

*In re Lyondell Chem. Co.*,
 402 B.R. 571 (Bankr. S.D.N.Y. 2009) .............................................................................22, 23

*In re Majestic Star Casino, LLC*,
 2010 Bankr. LEXIS 1874 ......................................................................................................20

*In re Majestic Star Casino, LLC*,
 2010 WL 2540457 (Bankr. D. Del. Apr. 24, 2010) ..................................................................8

*In re Malofiy*,
 653 Fed App'x 148 (3d Cir. 2016)...........................................................................................5

*In re Malofiy*,
 758 Fed App'x 264 (3d Cir. 2018)...........................................................................................5

*In re Maremont Corp.*,
 601 B.R. 1 (Bankr. D. Del. 2019) ..........................................................................................22

*In re Midway Games, Inc.*,
 428 B.R. 327 (Bankr. D. Del. 2010) ......................................................................8, 9, 13, 16

*In re Momentum Mfg. Corp.*,
 25 F.3d 1132 (2d Cir. 1994)....................................................................................................8

ii

## TABLE OF AUTHORITIES

*In re Phila. Newspapers, LLC*,
  407 B.R. 606 (E.D. Pa. 2009) ..................................................................9, 10, 22, 25

*In re Reliance Acceptance Grp., Inc.*,
  Nos. 98-288 (PJW), A-98-310, 2000 Bankr. LEXIS 2220 (Bankr. D. Del. Dec.
  6, 2000) .................................................................................................................14

*In re Saxby's Coffee Worldwide, LLC*,
  440 B.R. 369 (Bankr. E.D. Pa. 2009) ..................................................16, 20, 22, 23

*In re SN Liquidation, Inc.*,
  388 B.R. 579 (Bankr. D. Del. 2008) .................................................................18, 21

*In re TK Holdings, Inc.*,
  No. 17-11375 (BLS), Adv. No. 17-50880 (BLS) (Bankr. D. Del. Aug. 16,
  2017) .................................................................................................................14, 15

*In re Union Tr. Phila., LLC*,
  460 B.R. 644 (E.D. Pa. 2011) ...........................................................................12, 22, 24

*In re Union Trust Phil., LLC*,
  465 B.R. 765 (Bankr. E.D. Pa. 2011) .....................................................................19

*In re Univ. Med. Ctr.*,
  973 F.2d 1065 (3d Cir. 1992)....................................................................................8

*In re Vistacare Grp., LLC*,
  678 F.3d 218 (3d Cir. 2012)......................................................................................8

*In re W.R. Grace & Co.*,
  115 Fed. App'x. 565 (3d Cir. 2004)........................................................................24

*In re W.R. Grace & Co.*,
  386 B.R. 17 (Bankr. D. Del. 2008) .................................................................. passim

*Marino v. Usher*,
  No. 11-6811, 2014 WL 2116114 (E.D. Pa. May 21, 2014).......................................5

*McCartney v. Integra Nat'l Bank N.*,
  106 F.3d 506 (3d Cir. 1997)........................................................................8, 13, 15

*Pacor, Inc. v. Higgins*,
  743 F.2d 984 (3d Cir. 1984)....................................................................................10

*Paragon Litig. Tr. v. Noble Corp. PLC (In re Paragon Offshore PLC)*,
  588 B.R. 735 (Bankr. D. Del. 2018) .........................................................................9

iii

# TABLE OF AUTHORITIES

*Skidmore v. Led Zeppelin*,
   2016 WL 6674985 (C.D. Cal. Aug. 8, 2016)...........................................................................6

*Smits v. Hertz Corp.*,
   No. CL-19-547 (Va. Cir. Nov. 22, 2019)...............................................................................4

*Vangelis, et al. v. Hertz Global Holdings Inc., et al.*,
   No. 200501362 (Pa. Cnty. Ct. May 21, 2020) ......................................................................5

*Williams v. Hertz Corp.*,
   No. 19-CA-012657 (Fla. Hillsborough Cnty. Ct. Dec. 13, 2019)...........................................4

## STATUTES

11 U.S.C. § 105................................................................................................................9

11 U.S.C. § 105(a) .................................................................................................... passim

11 U.S.C. § 362 ......................................................................................................... passim

11 U.S.C. § 362(a)(1)........................................................................................................7

11 U.S.C. § 1107(a) ..........................................................................................................3

11 U.S.C. § 1108...............................................................................................................3

28 U.S.C. § 1334(b)........................................................................................................10

## OTHER AUTHORITIES

Del. Bankr. L.R. 9010-1(c) ...............................................................................................7

Fed. R. Bankr. P. 7065......................................................................................................1

Fed. R. Bankr. P. 9010......................................................................................................7

iv

The Debtors file this brief in support of their *Motion for Preliminary Injunctive Relief* (the "**Motion**"), filed contemporaneously herewith, and complaint [Adv. D.I. 1][2] (the "**Debtors Complaint**"),[3] seeking a preliminary injunction pursuant to sections 105(a) and 362 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 7065 of the Federal Rules of Bankruptcy Procedure, to prevent the False Police Report Plaintiffs from continuing to prosecute the Actions against the Non-Debtor Defendants, and respectfully state as follows:

## PRELIMINARY STATEMENT

From mid-2019 through the eve of the Petition Date, the False Police Report Plaintiffs filed six separate actions against the Debtors and the Non-Debtor Defendants in state courts in Delaware, Pennsylvania, Florida, Virginia, and Ohio (the "**False Police Report Actions**"). The False Police Report Plaintiffs allege that, due to purported errors with Hertz's computer and inventory tracking system, the Debtors and Non-Debtor Defendants falsely reported them to local law enforcement agencies for vehicle theft, causing their false arrest, false imprisonment, and various damages. *See* Debtors Compl. ¶ 16. Five of the Actions have not progressed past service of the complaint, and the sixth remains in the early stages of discovery.

The False Police Report Plaintiffs now ask this Court for relief from the automatic stay so they can continue to pursue these actions against the Debtors and the Non-Debtor Defendants in various state courts across the country. Not only should the Court reject this request, it should exercise its authority to extend the stay over the Non-Debtor Defendants for at least four reasons.

---

[2] Docket numbers with a "D.I." reference refer to documents filed in the lead jointly administered chapter 11 case, Case No. 20-11218 (MFW) (Bankr. D. Del.). Docket numbers with an "Adv. D.I." reference refer to documents filed in the adversary proceeding, Adv. No. 20-50761 (MFW) (Bankr. D. Del.).

[3] Capitalized terms used but not defined herein have the meanings ascribed to them in the Debtors' Complaint.

*First,* the Debtors owe contractual indemnification obligations to, and share insurance coverage with, their current and former directors and officers; thus, any expenses incurred by these Non-Debtor Defendants would result in a loss to the Debtors' estates, and any judgment against these Non-Debtor Defendants would in effect be a judgment against the Debtors.

*Second*, should the False Police Report Actions be allowed to proceed, the Debtors' leadership named as Non-Debtor Defendants would be required to prepare for and attend hearings, assist in preparing discovery responses, prepare for and participate in depositions, and help analyze and develop their legal defenses. This work would distract these key personnel from participating in the Debtors' restructuring during this critical preliminary stage of the Chapter 11 proceedings, and ultimately distract them from negotiating and consummating a plan of reorganization.

*Third*, allowing the cases to proceed against any of the Non-Debtor Defendants would put the Debtors at risk for collateral estoppel and record taint. Avoiding such harm would require the Debtors' involvement in the Actions, which would also burden their resources and divert attention from the restructuring.

*Fourth*, the equities weigh in favor of staying the Actions. As outlined further below, the Debtors' restructuring efforts would be irreparably harmed should the Actions be allowed to proceed. In contrast, the Plaintiffs are no longer in custody (to the extent they ever were) and face no imminent harm from the stay. Moreover, the Plaintiffs could bring the claims asserted in the Actions to this Court for full and final adjudication through the bankruptcy claims process. The balance of the harms thus favors the Debtors.

2

## STATEMENT OF FACTS

### The Debtors' Bankruptcy Proceeding

On May 22, 2020, the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On May 27, 2020, this court granted Debtors' motion for entry of an order confirming the stay of any and all proceedings or claims that were or could have been commenced before the commencement of the Debtors' Chapter 11 Cases, pursuant to section 362 of the Bankruptcy Code. D.I. 184.

### The Actions

While the particulars of each Action vary, the False Police Report Plaintiffs cumulatively allege that The Hertz Corporation ("**Hertz**"), certain Debtor affiliates of Hertz, and the Non-Debtor Defendants falsely reported them to local law enforcement agencies for vehicle theft despite either being in authorized possession of Hertz rental cars, or having duly returned their rental cars. Debtors Compl. ¶ 16. They allege that these false police reports resulted from known technological issues and human errors affecting Hertz's asset recovery process for missing vehicles. *Id.* The False Police Report Plaintiffs further claim that they were wrongfully arrested and prosecuted on account of these false police reports, suffering various damages as a result. *Id.*

On July 24, 2019, Henry B. Essick III sued Hertz and a Non-Debtor Defendant[4] in Ohio state court, alleging counts of malicious prosecution or abuse of process, intentional infliction of emotional distress, and negligence or gross negligence, and seeking, among other things,

---

[4] Debtors' franchisee Byers Car Rentals, LLC.

3

monetary damages, attorneys' fees, and damages for loss of reputation and emotional pain and suffering.

On November 22, 2019, Ryan Smits sued Hertz and several Non-Debtor Defendants[5] in Virginia state court alleging counts of false arrest, abuse of process, malicious prosecution, intentional infliction of emotional distress and negligence, and seeking, among other things, punitive damages, compensatory damages, and exemplary damages "to punish [the] Defendant[s]" and "to set an example for others."  Compl. at 28, *Smits v. Hertz Corp.*, No. CL-19-547 (Va. Cir. Nov. 22, 2019).  On that same date, Nancy Cullen-Smits (Mr. Smits's mother) filed a substantially identical complaint in the same court.

On December 13, 2019, Brent D. Williams, Sr. sued Hertz and certain Non-Debtor Defendants[6] in Florida state court alleging counts of malicious prosecution, abuse of process, intentional or negligent infliction of emotional distress and negligence or gross negligence, and seeking, among other things, punitive damages, compensatory damages, and exemplary damages "to set an example for others."  Compl. at 23, *Williams v. Hertz Corp.*, No. 19-CA-012657 (Fla. Hillsborough Cnty. Ct. Dec. 13, 2019).

On May 21, 2020, the day before the Petition Date, Roula Vangelis, on behalf of her minor children and similarly situated plaintiffs, sued the Debtors and several Non-Debtor Defendants[7] in Pennsylvania state court, alleging counts of negligence, false arrest or imprisonment, malicious abuse of process, malicious prosecution, and intentional or negligent infliction of emotional distress, and seeking, among other things, punitive damages,

---

[5] Former director and officer Kathryn V. Marinello and current employees Julie Wilkerson and Kemal Basar.

[6] Former director and officer Mark Paul Frissora and current employee Julie Wilkerson.

[7] Current and former employees Kyle Ebert, Scott Funk, Ken Graeber, Richard W. Livingston, Diana Speer, and Julie Wilkerson.

4

compensatory damages, and exemplary damages "to set an example for others." Compl. at 33, *Vangelis, et al. v. Hertz Global Holdings Inc., et al.*, No. 200501362 (Pa. Cnty. Ct. May 21, 2020).

On May 21, 2020, the day before the Petition Date, a group of twenty plaintiffs (led by plaintiff Hannah Ayoub) sued the Debtors and dozens of Non-Debtor Defendants[8] in Delaware state court alleging counts of malicious prosecution, abuse of process, false arrest or imprisonment, intentional or negligent infliction of emotional distress, negligence or gross negligence, negligent supervision and management, and unfair trade practices, and seeking, among other things, punitive damages, compensatory damages, and exemplary damages "to set an example for others." Compl. at 91, *Ayoub v. Hertz Global Holdings, Inc.*, No. N20C-05-189 VLM (Del. Super. Ct. May 21, 2020).

**Procedural History**

The Debtors understand that the lawyer to the False Police Report Plaintiffs in each of the Actions is Francis Malofiy.[9]  In February 2020, Mr. Malofiy sent Hertz's former CEO a letter on

---

[8] Current and former directors and officers Jodi Allen, David A. Barnes, Tyler Best, Tom Callahan, SungHwan Cho, Frederic Deschamps, Richard E. Esper, Carolyn N. Everson, Jeffrey T. Foland, Richard Frecker, Mark Paul Frissora, M. David Galainena, Leslie Hunziker, Vincent J. Intrieri, Jamere Jackson, Matthew Jauchius, Henry R. Keizer, Tom Kennedy, Robin C. Kramer, Murali Kuppuswamy, Kathryn V. Marinello, Alexandreia Marren, Scott Massengill, Samuel Merksamer, Anindita Mukherjee, Daniel A. Ninivaggi, Opal G. Perry, Kevin M. Sheehan, Paul Stone, John P. Tague, and Eliana Zem; former shareholders Icahn Associates Holding, LLC, Icahn Enterprises, Icahn Enterprises LP, Icahn Enterprises Holdings LP, Icahn Capital LP, and Icahn Enterprises GP, Inc.; and non-debtor corporate entities Hertz Investors, Inc., Hertz Vehicles LLC, Hertz Vehicles Financing LLC, and Hertz Vehicle Financing II LP.

[9] Mr. Malofiy was suspended for 3 months and 1 day by both the Eastern District of Pennsylvania and the Supreme Court of Pennsylvania for violating numerous rules of the Pennsylvania Code of Professional Conduct.  *See In re Malofiy*, 653 Fed App'x 148 (3d Cir. 2016) (affirming finding of four violations of Pennsylvania Code of Professional Conduct and affirming sanction); *In re Malofiy*, 758 Fed App'x 264 (3d Cir. 2018) (affirming denial of reinstatement in Eastern District of Pennsylvania).  In the case underlying Mr. Malofiy's suspension, the district court in the Eastern District stated that Mr. Malofiy had "behaved in a flagrantly unprofessional and offensive manner," and that he had created a "poisonous atmosphere" by his "continual belligerence of opposing counsel." *Marino v. Usher*, No. 11-6811, 2014 WL 2116114, at *1, 7 (E.D. Pa. May 21, 2014) (finding in a motion for sanctions that "Attorney Francis

5

behalf of certain of the False Police Report Plaintiffs, demanding significant payment to resolve the claims at issue in the Actions. *Declaration of Samuel P. Hershey* ("**Hershey Decl.**") Ex. A at 2. Mr. Malofiy threatened to begin filing additional lawsuits if Hertz did not "timely address" his demands. *Id.* Mr. Malofiy also advised Hertz to "[n]ote that because some of the demands exceed Hertz's self-insured limit of $10 million per occurrence, you should notify your excess coverage insurer." *Id.*

Hertz immediately began investigating Mr. Malofiy's claims. By the time it finished its investigation one month later, Hertz had determined that Mr. Malofiy's clients' false arrest claims were generally meritless and his claims of systematic failures were baseless.

After receiving this information, Mr. Malofiy did not withdraw or in any way revise his demands. Rather, late on May 21, 2020—the day before when news reports had projected Hertz was likely to (and did in fact) file bankruptcy petitions—Mr. Malofiy filed two additional lawsuits against Hertz: the *Ayoub* action (a mass tort action) and the *Vangelis* action.

There has been no activity in five of the six Actions beyond the filing of the complaints.[10] The sixth case, *Essick*, was in the initial phases of discovery when it was dismissed without prejudice owing to Hertz's bankruptcy.

Mr. Malofiy has not been admitted to appear in the Debtors' bankruptcy proceedings, although he is listed as co-counsel to the False Police Report Plaintiffs on their filings.[11]

---

Malofiy has acted disgracefully: lying to an unsophisticated, impoverished, unrepresented Defendant, thus convincing that Defendant to expose himself (probably baselessly) to substantial liability."). In yet another case, a district court found that Mr. Malofiy "demonstrated a tenuous grasp on legal ethics," and had engaged in "a litany of tasteless courtroom antics and litigation misconduct." *Skidmore v. Led Zeppelin*, 2016 WL 6674985, at *4 (C.D. Cal. Aug. 8, 2016), *vacated on other grounds sub nom.*, 905 F.3d 1116 (9th Cir. 2018), *aff'd on reh'g en banc sub nom.*, 952 F.3d 1051 (9th Cir. 2020).

[10] As noted above, the *Ayoub* and *Vangelis* cases were filed on the eve of Hertz's bankruptcy; Hertz has not been served in the *Cullen-Smits* or *Smits* cases; and although the *Williams* case was filed in December 2019, the plaintiff did not effectuate service on Hertz until May 22, 2020 (*i.e.*, the day Hertz filed for bankruptcy protection).

AMERICAS 103140006

Nonetheless, Mr. Malofiy speaks publicly for the False Police Report Plaintiffs, including with regard to these proceedings.  *See, e.g.*, Mike Curley, *Drivers Ask to Sue Hertz for False Reports Despite Ch. 11*, Law 360 (June 25, 2020), https://www.law360.com/articles/1286877/drivers-ask-to-sue-hertz-for-false-reports-despite-ch-11 (describing the Motion and quoting Mr. Malofiy as saying, "Hertz is an evil corporation, and its directors and officers had known for years that they were putting decent people in jail wrongfully, and they did nothing about it").  Additionally, after the Petition Date, Mr. Malofiy started an online petition titled "Stop Hertz from Throwing People in Jail with False Police Reports."[12]  These actions not only perpetuate falsehoods about the Debtors, but they are a transparent effort to put pressure on the Debtors to pay or otherwise settle Mr. Malofiy's clients' prepetition claims, in violation of the automatic stay.

## ARGUMENT

### A.     This Court Has Authority to Enjoin the False Police Report Actions against the Non-Debtor Defendants

11 U.S.C. § 362 automatically stays "the commencement or continuation . . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."  11 U.S.C. § 362(a)(1); *see also id.* § 362(a)(3) ("any act to obtain possession of property of the estate or of

---

[11] On June 10, 2020, the False Police Report Plaintiffs filed a notice of appearance [D.I. 372] and verified statement under Bankruptcy Rule 2019 [D.I. 375]. Each filing includes Mr. Malofiy as counsel to the False Police Report Plaintiffs and states he is "[l]isted pursuant to Rule 9010-1(c)(iii)." *See* D.I. 372 at 2 n.2; D.I. 375 at 4 n.2.  There is no Bankruptcy Rule 9010-1, nor is there a Local Rule 9010-1(c)(iii).  *See* Fed. R. Bankr. P. 9010; Del. Bankr. L.R. 9010-1(c) (requiring association with Delaware counsel, but containing no subparts).

[12] *See Stop Hertz from Throwing People in Jail with False Police Reports*, Change.org, https://www.change.org/p/hertz-rent-a-car-hold-hertz-responsible-for-throwing-paying-customers-in-jail?utm_source=share_petition&utm_medium=custom_url&recruited_by_id=7504abd0-b6f3-11ea-9c44-ad1951e1526c.

AMERICAS 103140006

property from the estate or to exercise control over property of the estate."). The automatic stay "is one of the fundamental debtor protections supplied by the Bankruptcy Code" and provides debtors with a much-needed "breathing spell" to formulate a reorganization plan. *See In re Univ. Med. Ctr.*, 973 F.2d 1065, 1074 (3d Cir. 1992); *see also In re Majestic Star Casino, LLC*, 2010 WL 2540457, at *2 (Bankr. D. Del. Apr. 24, 2010) ("The automatic stay is a fundamental debtor protection."); *In re Midway Games, Inc.*, 428 B.R. 327, 333 (Bankr. D. Del. 2010) (the automatic stay is designed "to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor.").

While the automatic stay applies only to actions against debtors, or actions against estate property, section 105(a) of the Bankruptcy Code authorizes a court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy courts are "courts of equity," and under section 105(a), they may "issue injunctive relief where parties are pursuing actions pending in other courts that threaten the integrity of a bankrupt's estate." *In re Vistacare Grp., LLC*, 678 F.3d 218, 231 n.11 (3d Cir. 2012) (internal quotation marks omitted); *see also In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("Section 105(a) should be construed liberally to enjoin [actions] that might impeded the reorganization process." (internal quotation marks omitted)); *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509 (3d Cir. 1997) (noting the bankruptcy courts' authority to apply automatic stay protection to non-debtor third parties where stay protection is essential to the debtor's reorganization efforts).

Consistent with the "congressional intent and fundamental purposes underlying the automatic stay," numerous federal courts—including this Court—have routinely used their broad

equitable powers under section 105(a) to extend the stay to claims against non-debtors that are not otherwise subject to the provision of section 362.  *See In re Midway Games, Inc.*, 428 B.R. at 334 (extending automatic stay to third party non-debtor officers and enjoining commencement of "Wage Act Claims" against the officers); *In re Phila. Newspapers, LLC*, 407 B.R. 606, 616 (E.D. Pa. 2009) ("The power of the Court to stay actions against Non-Debtor Defendants, pursuant to section 105(a), is clear."); *see also Paragon Litig. Tr. v. Noble Corp. PLC (In re Paragon Offshore PLC)*, 588 B.R. 735, 760 (Bankr. D. Del. 2018) (noting that under section 105, the bankruptcy court's powers "extend to enjoining proceedings in other fora against non-debtors, at least as it is necessary to carry out the provisions of the Bankruptcy Code" (internal quotations omitted)).

Here, for all the reasons set forth below, allowing the False Police Report Actions to proceed against the Non-Debtor Defendants would threaten the Debtors' chances of a successful reorganization.  Thus, this Court should use its equitable powers to extend the automatic stay and enjoin the False Police Report Actions from proceeding against the Non-Debtor Defendants.

B.    **This Court Should Enjoin the False Police Report Actions against the Non-Debtor Defendants**

Courts in the Third Circuit have adopted a three-step inquiry to determine whether to enjoin claims against a non-debtor defendant: (i) whether the bankruptcy court has subject matter jurisdiction over the proceedings against the non-debtors; (ii) whether it is appropriate for the bankruptcy court to expand the protections of the automatic stay to the non-debtors; and (iii) whether issuing a preliminary injunction pursuant to 11 U.S.C. § 105 is a proper exercise of discretion.  *See In re Phila. Newspapers, LLC*, 407 B.R. at 611; *In re W.R. Grace & Co.*, 386 B.R. 17, 25-30 (Bankr. D. Del. 2008).  Under each of these inquiries, a stay of the False Police Report Actions against the Non-Debtor Defendants is appropriate.

9

### 1.    This Court Has Related-to Jurisdiction over the False Police Report Actions against the Non-Debtor Defendants

Pursuant to 28 U.S.C. § 1334(b), bankruptcy courts have subject matter jurisdiction in federal district courts over "all civil proceedings . . . related to cases under title 11." 28 U.S.C. § 1334(b). In enacting Section 1334(b), "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

A bankruptcy court has "related to" jurisdiction over litigation between non-debtor third parties where "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re W.R. Grace & Co.*, 386 B.R. at 25 (citing *Pacor, Inc.*, 743 F.2d at 994). "[The] key word in [the Pacor] test is 'conceivable.' Certainty, or even likelihood, is not a requirement." *Id.* at 26. As a result, the bankruptcy court will have jurisdiction over any action where "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor, Inc.*, 743 F.2d at 994. In addition, the Third Circuit has repeatedly held that bankruptcy courts have "related to" jurisdiction over actions against non-debtors that implicate the debtor's contractual indemnification obligations to the non-debtor. *See Belcufine v. Aloe*, 112 F.3d 633, 636-37 (3d Cir. 1997) (finding "related-to" jurisdiction over non-debtors with indemnity claims); *In re Phila. Newspapers, LLC*, 407 B.R. at 613 ("[A] contractual indemnity right against the Debtor will satisfy the 'related to' provision.").

The False Police Report Actions against the non-debtor defendants will clearly impact the handling and administration of the bankruptcy estate. ***First***, as to the former and current

10

directors and officers, the Actions implicate several contractual indemnification obligations owed by the Debtors.  The Amended and Restated By-Laws of Debtor Hertz Global Holdings, Inc. state that:

> The Corporation **shall indemnify, to the fullest extent permitted** by the [General Corporate Law of the State of Delaware] and other applicable law, any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (each, a "proceeding"), by reason of the fact that he or she is or was or has agreed to become a Director or officer of the Corporation . . . against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him or her or on his or her behalf in connection with such proceeding and any appeal therefrom, if he or she acted in good faith and in a manner he or she reasonably believed to be in or not opposed to the best interests of the Corporation[.]

Hershey Decl., Ex. B § 6.01 (emphasis added).  These provisions alone grant "related to" jurisdiction over the Actions against the current and former directors and officers named as defendants.  *See Belcufine*, 112 F.3d at 636 ("[C]ontractual indemnity claims can have an effect on a bankruptcy estate and thus provide a basis for the exercise of 'related to' jurisdiction."); *In re W.R. Grace & Co.*, 386 B.R. at 30.

*Second*, litigating the Actions will divert the time and energy of key personnel from the reorganization effort.  Many of the Non-Debtor Defendants, including individuals who may do work for the non-debtor corporate entities, are officers and directors of the Debtors and are working heavily on the Chapter 11 cases.  For example, Richard E. Esper, the Debtors' Chief Accounting Officer and a defendant in the Actions, has been heavily involved in analyzing the Debtors' pre- and post-petition liabilities, formulating the Debtors' schedules of assets and liabilities, assessing the Debtors' insurance coverage, addressing requests from the Debtors' various creditor constituencies, and assisting the Debtors in meeting certain reporting requirements as part of the bankruptcy process.  *See Declaration of Richard E. Esper in Support*

*of Debtors' Motion for Preliminary Injunction Pursuant to 11 U.S.C. § 105(A)* ("**Esper Decl.**") ¶ 3.   Other employees who are named defendants in the Actions, such as Jamere Jackson, the Debtors' Chief Financial Officer and first day declarant, have been involved with other crucial aspects of the Debtors' restructuring including, among other things, providing facts, information, and materials to the Debtors' bankruptcy counsel and other advisors, as well as assisting with various motions, presentations to creditors and third parties, and general restructuring matters. *See* Esper Decl. ¶ 6.   Diverting these employees' time and energy away from the Chapter 11 Cases to defend the False Police Report Actions would have a significant negative effect on the administration of the bankruptcy estate.   *See In re Union Tr. Phila., LLC*, 460 B.R. 644, 656 (E.D. Pa. 2011) (holding bankruptcy court had jurisdiction over state court proceedings where proceedings would "consume significant time and resources" of non-debtors who were "crucial to the [Debtor's] reorganization efforts"); *see also* Esper Decl. ¶¶ 4-7.

        ***Third***, allowing the False Police Report Actions to proceed against any of the Non-Debtor Defendants will create a substantial risk of collateral estoppel and record taint.   As explained below, the False Police Report Actions raise substantially similar questions of law and fact as between the Debtors and all Non-Debtor Defendants; thus, the Debtors face a substantial risk of collateral estoppel.   *See In re Union Tr. Phila., LLC*, 460 B.R. at 657 (holding bankruptcy court had related to jurisdiction in part because of risk of collateral estoppel); *In re Am. Film Techs.*, 175 B.R. 847, 853-55 (Bankr. D. Del. 1994) (staying the prosecution of actions against non-debtor defendants who were officers and/or directors of the debtor on collateral estoppel grounds).   To avoid these effects, the Debtors will be required to become involved in the Actions, which will divert the Debtors' resources and focus away from the restructuring at this crucial part of the process.

12

Taken together, the contractual indemnification provisions, diversion of key personnel, and risk of collateral estoppel are sufficient to confer "related to" jurisdiction over the False Police Report Actions against all Non-Debtor Defendants.

### 2. It Is Appropriate for This Court to Enjoin the False Police Report Actions Against the Non-Debtor Defendants

Courts generally use two factors to determine whether it is appropriate for the bankruptcy court to expand the protections of the section 362 automatic stay to non-debtors under section 105(a): "(1) whether the non-debtor and debtor share an identity of interest such that a suit against the non-debtor is essentially a suit against the debtor and (2) whether the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization." *In re W.R. Grace & Co.*, 386 B.R. at 30; *see also In re Ir. Bank Resolution Corp.*, No. 13-12159-CSS, 2019 U.S. Dist. LEXIS 166153, at *15-16 (D. Del. Sep. 27, 2019).  Both factors are present here.

### a. The Debtors Share an Identity of Interest with the Non-Debtor Defendants

The identity of interest test is satisfied "where the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997) (internal citations omitted); *see also In re W.R. Grace & Co.*, 386 B.R. at 31; *In re Midway Games, Inc.*, 428 B.R. at 334 (Bankr. D. Del. 2010) (extending stay where "the allegations made by [plaintiffs] reveal that the Debtors are the real target of the alleged Wage Act Claims").  Such cases frequently involve situations in which the debtor owes indemnity obligations to its non-debtor co-defendants.  *See, e.g.*, *McCartney*, 106 F.3d at 510; *In re Midway Games Inc.*, 428 B.R. at 334; *In re Am. Film Techs.*, 175 B.R. at 855.

13

Courts have also found a non-debtor shares an identity of interest where the debtor's operations and conduct "are at the core of the issues raised" in the actions against the non-debtor. *In re W.R. Grace & Co.*, 386 B.R. at 30; *see also In re Reliance Acceptance Grp., Inc.*, Nos. 98-288 (PJW), A-98-310, 2000 Bankr. LEXIS 2220, at *15-16 (Bankr. D. Del. Dec. 6, 2000) (staying action against non-debtor where claims were based on non-debtor's "alleged improper conduct engaged in with [debtor]"); *In re Cont'l Airlines*, 177 B.R. 475, 479-80 (D. Del. 1993) (finding debtor was real party defendant where "the substantive allegations raised in the pleadings . . . demonstrate that [debtor] is the alleged wrongdoer in those actions").

*W.R. Grace* and *TK Holdings* are instructive.  In *W.R. Grace*, the debtor W.R. Grace had mined ore in Libby, Montana that was loaded onto railroad cars owned by non-debtor BNSF. 386 B.R. at 24.  Plaintiffs, the Libby claimants, sued for asbestos-related injuries arising from clouds of dust emanating from the railroad cars.  *Id.*  The Court held that BNSF shared an identity of interest with the debtor because BNSF's liability was "alleged to arise from its dealings with Debtors, implicate[d] Debtors' insurance, and defense of the [state] actions by BNSF would require Debtors to defend those actions." *Id.* at 31.  Similarly in *TK Holdings, Inc. v. Hawaii (In re TK Holdings, Inc.)*, the Court enjoined tort actions brought against non-debtor automobile manufacturers, noting that, notwithstanding that the plaintiffs asserted other claims and theories of liability, "literally everything here begins with the delivery and installation of a defective part manufactured by the debtors."  Transcript of August 16, 2017 Hearing at 14:22-15-4, *In re TK Holdings, Inc.*, No. 17-11375 (BLS), Adv. No. 17-50880 (BLS) (Bankr. D. Del. Aug. 16, 2017) ("*In re TK Holdings* Hr'g Tr.").  For that reason, among others, the Court held that there was an identity of interest among the debtors and the non-debtor manufacturers, and

14

enjoined state governments from continuing to prosecute enforcement actions against the debtors and non-debtors related to defective airbags. *See id.* at 17:15-18, 5:18-19.

Here, the Actions make no distinction between the Debtors and the Non-Debtor Defendants.  Rather, the claims at issue all arise from the Debtors' and their affiliates' alleged policies and oversights, and the actions of the individual defendants in their capacity as employees, officers, directors and shareholders of those entities.  There is thus a clear "identity of interest" between the Debtors and the Non-Debtor Defendants.  *See In re W.R. Grace & Co.*, 386 B.R. at 31; *In re TK Holdings* Hr'g Tr. at 15:13-16  (noting that in the litigation, "the debtors' interest[s] are at issue as the record reflects that the OEMs['] defenses in each of these cases will certainly revolve around the acts and omissions of the debtors").  Moreover, as noted above, the Debtors' by-laws provide for indemnification to the fullest extent under Delaware law if the officer or director acted in good faith and in a manner reasonably believed to be in Debtors' best interest.  *See* Hershey Decl., Ex. B § 6.01.  This provides further evidence that the Debtor and non-debtor director and officer defendants "share an identity of interest."  *See In re W.R. Grace & Co.*, 386 B.R. at 31 ("[T]he contractual indemnification agreements discussed above indicate an identity of interest between [non-debtor] and Debtors."); *see also A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986).

        **b.**      **Allowing the False Police Report Actions to Continue Against the Non-Debtor Defendants Would Adversely Affect the Debtors' Restructuring Efforts**

Actions against a non-debtor should be stayed where allowing the action to proceed would adversely impact the debtor's reorganization efforts.  *See In re W.R. Grace & Co.*, 386 B.R. at 31–32; *see also McCartney*, 106 F.3d at 510 (3d Cir. 1997) ("Courts have also extended the stay to nondebtor third parties where stay protection is essential to the debtor's efforts of

15

reorganization."); *In re Saxby's Coffee Worldwide, LLC*, 440 B.R. 369, 379 (Bankr. E.D. Pa. 2009).

Allowing the False Police Report Actions to proceed against the Non-Debtor Defendants would adversely impact the Debtors' restructuring effort because, absent a stay, (1) losses incurred by the Non-Debtor Defendants under the False Police Report Actions would deplete the assets available to the bankruptcy estates of the Debtors through contractual indemnification obligations and the exhaustion of shared insurance limits; (2) the Debtors would be required to divert substantial resources from their reorganization efforts towards the False Police Report Actions, thus negatively impacting Debtors' ability to restructure; and (3) the Debtors would face substantial risk of collateral estoppel, record taint, and evidentiary prejudice, which would force them to get involved to avoid these risks and negate the principles underlying the automatic stay.

### i. Absent a Stay, The False Police Report Actions Will Deplete the Assets of the Bankruptcy Estates of the Debtors

Permitting the False Police Report Actions to continue against the Non-Debtor Defendants will put the assets of the bankruptcy estates of the Debtors at risk and have an adverse impact on the Debtors' reorganization plan. Courts in this Circuit have recognized that an adverse impact on a debtor's reorganization is "obvious" where contractual indemnity and shared insurance policies would require the debtor to expend resources. *See In re W.R. Grace & Co.*, 386 B.R. at 31-32; *see also In re Midway Games, Inc.*, 428 B.R. at 334 (extending stay to officers of debtors because debtors would be directly responsible for indemnifying target officer, thereby "impacting Debtors' remaining assets"). Similarly, in *A.H. Robins*, the court extended the stay over non-debtor co-defendants where they faced an "avalanche of actions" that would "consume all the assets of the debtor and exhaust all the resources of its executives and

16

employees." *A.H. Robins Co.*, 788 F.2d at 996, 1013.  In *Continental Airlines*, the Delaware District Court affirmed the extension of a stay over director and officer defendants where prosecution of certain actions would deplete the debtor's assets because the debtor was "legally obligated to indemnify, to the fullest extent permitted by Delaware law, its directors and officers for any judgments against them in connection with these [class action lawsuits] challenging actions taken by them in their official capacity and to advance litigation expenses to its officers and directors for their defense of these actions." *In re Cont'l Airlines*, 177 B.R. at 481.  Without a stay of the False Police Report Actions, the Debtors' estates may be depleted through (1) contractual indemnification claims brought by the Non-Debtor Defendants, (2) the depletion of shared policy limits, and (3) reimbursement claims by insurance carriers against the Debtors.

As noted above, the Debtors owe contractual indemnification obligations to their current and former directors and officers "to the fullest extent permitted" under Delaware law.  Hershey Decl., Ex. B § 6.01.  Any losses incurred by the Non-Debtor Defendants will deplete the assets of the bankruptcy estates of the Debtors through the Non-Debtor Defendants' contractual indemnification claims.  Importantly, the existence of D&O insurance policies held by the Debtors does not change this fact.

The D&O insurance policies held by the Debtors include Side-A Coverage (coverage for non-indemnified claims made against directors, officers, and employees), Side-B Coverage (for the Debtors in indemnifying directors, officers, and employees against claims), and Side-C Coverage (for the Debtors for claims made directly against them).  *See* Hershey Decl., Ex. C. However, the D&O insurance policies held by the Debtors have shared limits applicable to all of the various coverages.  *See id.*, Ex. C, Item 3A.  These shared insurance limits are assets of the bankruptcy estate and permitting the Non-Debtor Defendants to exhaust these assets for the False

17

Police Report Actions would deplete the amount of coverage available to the Debtors for other claims. *Cf. In re SN Liquidation, Inc.*, 388 B.R. 579, 584 (Bankr. D. Del. 2008) (holding that debtor's primary insurance, which covered both the directors and officers and the debtor, were property of the bankruptcy estate, and depletion of those proceeds would "adversely affect the Debtors' estate").

The Non-Debtor Defendants may also be insured under Side-A Excess difference in conditions ("**DIC**") insurance policies. *See* Hershey Decl., Ex. D.   However, even if the Non-Debtor Defendants were to pursue coverage from the Side-A Excess DIC Policies for the False Police Report Actions, it would have an adverse impact on the Debtors' estates.   While the Side-A Excess DIC insurance policies may be required to "drop down" under certain circumstances and cover the insureds, those Side-A Excess DIC insurance carriers are thereafter subrogated to the Non-Debtor Defendants' rights, including the Non-Debtor Defendants' indemnification rights against the Debtors and any rights the Non-Debtor Defendants would have against the underlying insurance carriers.   *Id.*, Ex. D § 5.3.1.   Therefore, even if the Side-A Excess DIC insurance policies covered the Non-Debtor Defendants' losses, the assets of the bankruptcy estates would still be depleted through the resulting subrogation claims that would be asserted by the Side-A Excess DIC insurance carriers.

Moreover, the six False Police Report Actions collectively bring claims against over 35 current and former directors, officers, and employees.   Debtors Compl. ¶¶ 16-21.   If all these individuals sought indemnification for their defense costs and any judgments against them, the entire stack of Excess Side-A DIC Coverage could be depleted, and the Non-Debtor Defendants would have no choice but to seek coverage under the remaining, shared limits of coverage with the Debtors—shared limits that are part of the bankruptcy estate.

In addition to the D&O insurance, any coverage sought for the False Police Report Actions by the Non-Debtor Defendants under the commercial general liability insurance policies held by the Debtors would also have an adverse impact on the estates. The Debtors' primary-layer commercial general liability insurance is a fronting policy that involves a $5 million per-claim limit with a corresponding $5 million per-claim deductible. *See* Hershey Decl., Ex. E. Under the terms of the Reimbursement of Deductible Endorsement, the Debtors must reimburse the fronting insurance company up to the amount of the deductible for any amounts paid under the policy on a joint and several basis. *Id.* Therefore, in the event that the fronting insurance company pays anything on behalf of the Non-Debtor Defendants under a commercial general liability policy, the fronting insurance company would be entitled to recover those sums directly from any Debtors under the policy.

Finally, while excess umbrella insurance may be available for claims exceeding $10 million, any payment under the excess umbrella insurance policies for the False Police Report Actions would deplete the shared, aggregate limits of the umbrella policies as well. *See* Hershey Decl. Ex. F. Indeed, Mr. Malofiy has acknowledged as much. *See* Hershey Decl., Ex. A at 2.

### ii. Allowing the False Police Report Actions to Proceed Will Divert Substantial Resources Away from the Debtors' Reorganization Efforts

Allowing the False Police Report Actions to proceed will divert substantial resources away from the Debtors' reorganization efforts, thus hindering the Debtors' abilities to emerge successfully from bankruptcy under a confirmed plan of reorganization. *See In re Cont'l Airlines*, 177 B.R. at 481; *see also In re Union Trust Phil.*, *LLC*, 465 B.R. 765, 772-74 (Bankr. E.D. Pa. 2011) (extending the stay to restrain state court proceedings against the sole members of the debtor who were intimately involved in running the debtor's business). As noted above, the

19

Non-Debtor Defendants include senior executives, including the current President and CEO, CFO, General Counsel, various other Senior and Executive Vice Presidents, and current members of the board of directors of the Debtors, who are critical to the still-young reorganization effort.  *See, e.g.*, Ayoub Compl. ¶¶ 385, 389, 391, 392, 394, 396, 399, 400, 403, 406-414.  The Debtors' restructuring work is at a critical juncture, when important objectives such as the procurement of DIP financing, the claims process, and the negotiations leading to a plan of reorganization all lie ahead.  In addition, a number of key directors, officers, and employees currently may do work for the non-Debtor corporate entities while also serving in their critical roles for the Debtors.  These individuals are essential to the Debtors' effort to consummate a plan for reorganization and successfully restructure.  Esper Decl. ¶¶ 5-6. Defending these Actions would require these individuals to prepare for depositions, prepare for and attend hearings, assist in preparing discovery responses, and help analyze and develop their (and the non-Debtor affiliates') legal defenses in the False Police Report Actions.  *Id.* ¶ 6.  This would substantially divert the time, energy and attention of these key personnel during a critical time and would pose a meaningful threat to the Debtors' successful reorganization.  *See id.* ¶¶ 5-6; *see also In re Saxby's Coffee Worldwide, LLC*, 440 B.R. at 377-81 (extending the stay to restrain various lawsuits against the debtor's principals, crediting testimony that their full attention was necessary for the success of the reorganization).

### iii.    An Adverse Ruling Would Likely Result in Collateral Estoppel, Record Taint and Evidentiary Prejudice

An adverse ruling would result in collateral estoppel, record taint, and evidentiary prejudice.  *See In re Majestic Star Casino, LLC*, 2010 Bankr. LEXIS 1874, at *5.  Actions against non-debtor co-defendants are properly and routinely enjoined where there is a risk that the debtor will be bound by key factual and legal determinations in subsequent proceedings.  *See*

*In re SN Liquidation, Inc.*, 388 B.R. at 585 (noting courts have stayed actions against officers and directors because "a finding of liability against management defendants could have a preclusive effect, as collateral estoppel, against the debtors").  Such injunctions are necessary because the risk of collateral estoppel will likely require the Debtors to get involved in the defense "as if [they were] a named defendant" and thus negate the protections afforded by the automatic stay.  *See In re Am. Film Techs.*, 175 B.R. at 851.

Here, as explained above, the False Police Report Actions are premised on the same factual and legal allegations, and each one includes the Debtors as co-defendants.  *See* Debtors Compl. ¶¶ 22-27.  If the Court permits the Actions to move forward against the Non-Debtor Defendants during bankruptcy, any decisions or fact-finding a court makes against the Non-Debtor Defendants would likely later bind the Debtors.  Thus, the Debtors would be forced to address the Actions, requiring key Debtor personnel to attend hearings, participate in depositions, and respond to Plaintiffs' discovery requests to avoid these risks.  Esper Decl. ¶ 7.  The Debtors would also incur significant financial burden in the form of attorneys' fees and costs, discovery, trial preparation, and trial.  *Id.*  This would only encumber the Debtors' estates with additional litigation and defeat the point of the automatic stay.  *See In re W.R. Grace & Co.*, 386 B.R. at 34-35.

C.    **The Equities Weigh in Favor of Enjoining the False Police Report Actions Against the Non-Debtor Defendants**

The traditional standards for a preliminary injunction weigh in favor of the Court exercising its discretion to enjoin the False Police Report Actions against the Non-Debtor Defendants.  Courts in this Circuit consider four factors in issuing a preliminary injunction: "(1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) the extent to which the

21

enjoined party would suffer irreparable injury if the injunction is issued, and (4) public interest." *In re W.R. Grace & Co.*, 386 B.R. at 32; *see also In re Phila. Newspapers, LLC*, 407 B.R. at 617. All four factors are satisfied here.

### 1.    The Debtors Are Likely to Successfully Restructure

In the bankruptcy context, "reasonable likelihood of success" means a reasonable likelihood of successful reorganization. *In re W.R. Grace & Co.*, 386 B.R. at 33 ("[T]he court must apply the usual preliminary injunction standard . . . and consider whether the debtor has a reasonable likelihood of a successful reorganization.") (citations and internal quotation marks omitted). This factor generally favors the debtor where the bankruptcy case is in its early stages. *See In re Saxby's Coffee Worldwide, LLC*, 440 B.R. at 381 ("[A]t this early stage of the case, there are sufficient indicia that the Debtor has a reasonable prospect of reorganizing."); *In re Union Tr. Phila., LLC*, 460 B.R. at 660 (affirming bankruptcy court's finding that the debtor had a reasonable likelihood of success where the debtor's prospects for a successful reorganization remained viable "at this early stage," and the debtor was entitled to additional time to formulate a plan).

All a debtor must show to satisfy the "likelihood of successful reorganization" factor is to show that "it is proceeding on track," meeting the challenges faced so far, and that "there is no reason to believe or suspect" at that point that the reorganization will fail. *In re Lyondell Chem. Co.*, 402 B.R. 571, 590 (Bankr. S.D.N.Y. 2009). Indicia demonstrating a likelihood of successful reorganization includes having sufficient cash flow to fund a company's operations through Chapter 11. *See, e.g., In re Maremont Corp.*, 601 B.R. 1, 24 (Bankr. D. Del. 2019) ("The financial projections prepared by the Debtors based on this ownership show sufficient cash

22

flow to fund the Reorganized Debtors' operations going forward. . . . Accordingly, the Debtors have established that the Plan has a reasonable likelihood of success.").

The Debtors only just commenced their bankruptcy cases on May 22, 2020 and are proceeding on track. The Debtors have demonstrated no reason to believe or suspect that their reorganization will fail. *See In re Lyondell Chem. Co.*, 402 B.R. at 590. Moreover, the Debtors have shown affirmatively that there are "sufficient indicia" that they are likely to have a successful reorganization. *See In re Saxby's Coffee Worldwide, LLC*, 440 B.R. at 381. "The Company arrives in these cases with substantial unencumbered cash sufficient to fund operations at least through the initial stage of these Chapter 11 Cases." *Declaration of Jamere Jackson in Support of Debtors' Petitions and Requests for First Day Relief* [D.I. 28] ("**First Day Decl.**", dated May 24, 2020, ¶ 12.[13] Because the Debtors filed for Chapter 11 recently, and because the Company has thus far proceeded on track, the Debtors have a reasonable likelihood of a successful reorganization.

### 2.    Absent an Injunction, the Debtors Will Be Irreparably Harmed

The Debtors will be irreparably harmed if the False Police Report Actions are allowed to proceed. In the bankruptcy context, a stay should be granted where the litigation "could interfere with the reorganization of the debtor" or "would interfere with, deplete or adversely affect property of [the] estates or which would frustrate the statutory scheme of chapter 11 or diminish [the debtor's] ability to formulate a plan of reorganization." *In re W.R. Grace & Co.*, 386 B.R. at

---

[13] *See also* May 27, 2020 Hr'g Tr. at 133:1-6 ("[T]he debtors have entered the Chapter 11 cases with approximately $883 million of cash, the majority of which the debtors contend is unencumbered. The debtors intend to use that unencumbered cash, as well as post-petition receivables that the debtors similarly contend is unencumbered to fund the early stages of the case."); *id.* at 23:18 ("[W]e have the liquidity to continue operating at this point"); *id.* at 23:24-24:3 ("[T]he European entities are currently positioned to fund themselves. There is over 200 million euros of available cash liquidity in our European business and we believe that that's going to get us through until the end of September or October."); *id.* at 23:10-12 ("At the time of the filing the company was sitting on just under $900 million dollars of cash. We believe the vast majority of that is unencumbered.").

23

35 (quoting *In re W.R. Grace & Co.*, 115 Fed. App'x. 565, 569-70 (3d Cir. 2004)).  Allowing the False Police Report Actions to go forward would irreparably harm the Debtors' reorganization efforts for all the reasons stated above.  *See supra* Section B.2.b (noting that absent a stay, the Debtors would owe contractual indemnification obligations to many of the Non-Debtor Defendants, would face a risk of collateral estoppel, and many Non-Debtor defendants who are critical to the reorganization would need to divert their time and resources); *see also* Esper Decl. ¶¶ 4-7.

> **3.** **The Irreparable Harm to the Debtors Outweighs Any Potential Harm to Plaintiffs**

The balance of harms strongly favors the issuance of a preliminary injunction.  As noted above, the Debtors face imminent and irreparable harm that would significantly affect their efforts to reorganize should the False Police Report Actions be allowed to proceed.  On the other hand, the Plaintiffs are no longer in custody, and extending the stay to the Non-Debtor Defendants would merely delay the False Police Report Actions.  A delay in litigating a claim does not outweigh the potential harm to the Debtors.  *See In re Am. Film Techs.*, 175 B.R. at 849 ("[Plaintiff] is not being asked to forego his prosecution against the individual defendants, only to delay it. Given the stipulated delay of 10 months, a further delay of limited duration will not cause [Plaintiff] irreparable harm."); *In re Union Tr. Phila., LLC*, 460 B.R. at 660 ("[T]he fact that efforts to collect on the judgments may be delayed for short period in and of itself is not sufficient to outweigh the potential harm to [Debtor].").  Indeed, the damages that Plaintiffs seek relate to events that have occurred in the past, and not to harms that may conceivably injure Plaintiffs in the future.  Further, the requested relief would merely stay the False Police Report Actions; Plaintiffs may always resume their claims against the Non-Debtor Defendants at a later date.  Thus, the balance of harms weighs in favor of the Debtors.

24

**4.**     **Injunctive Relief Is In the Public Interest**

Here, the public interest clearly favors extending the stay and enjoining the litigating of the False Police Report Actions against the Non-Debtor Defendants.  Courts have regularly noted that strong public interest in promoting a successful reorganization.  *See In re Am. Film Techs.*, 175 B.R. at 849 ("In the context of bankruptcy proceedings, the public interest element means the promoting of a successful reorganization. . . . It is one of the paramount interests of this court to assist the Debtor in its reorganization efforts.") (internal citations and internal quotation marks omitted); *In re Phila. Newspapers LLC*, 407 B.R. at 617 (noting the "substance and size" of the Debtor and immense importance in a prompt and successful reorganization" in finding that the public interest in reorganization prevailed).  For all the reasons noted above, allowing the cases to proceed would diminish the ability of the Debtors to successfully reorganize and would diminish the size of the bankruptcy estate, from which the Plaintiffs hope to recover.  If the Debtors are not able to reorganize, they would be forced to shutter hundreds of its airport and off-airport rental sites—thereby hampering the flow of local and international travel, reducing competition in the car rentals industry, and contributing to historic unemployment rates in the United States.  *See generally* First Day Decl.  Therefore, the public interest weighs in favor of enjoining the False Police Report Actions, and the Court should grant this preliminary injunction.

## <u>CONCLUSION</u>

For the reasons stated herein, the Debtors respectfully request that this Court grant the Motion and preliminarily enjoin the continued litigation of the False Police Report Actions.

AMERICAS 103140006

Dated: July 17, 2020

*/s/ Robert J. Stearn, Jr.*

**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
John H. Knight (No. 3848)
Brett M. Haywood (No. 6166)
Christopher M. De Lillo (No. 6355)
J. Zachary Noble (No. 6689)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
collins@rlf.com
stearn@rlf.com
knight@rlf.com
haywood@rlf.com
delillo@rlf.com
noble@rlf.com

—and—

**WHITE & CASE LLP**

Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone:    (305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com

J. Christopher Shore (admitted *pro hac vice*)
David M. Turetsky (admitted *pro hac vice*)
Samuel P. Hershey (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone:    (212) 819-8200
cshore@whitecase.com
david.turetsky@whitecase.com
samuel.hershey@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, IL 60606
Telephone:    (312) 881-5400
jzakia@whitecase.com

Ronald K. Gorsich (admitted *pro hac vice*)
Aaron Colodny (admitted *pro hac vice*)
Andrew Mackintosh (admitted *pro hac vice*)
Doah Kim (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone:    (213) 620-7700
rgorsich@whitecase.com
aaron.colodny@whitecase.com
amackintosh@whitecase.com
doah.kim@whitecase.com

*Co-Counsel to the Debtors and
Debtors-in-Possession*